19064.   KING HARDWARE COMPANY *v.* ENNIS.
19065.   PURCHASE & SALE COMPANY *v.* ENNIS.

DECIDED FEBRUARY 22, 1929.   REHEARING DENIED MARCH 2, 1929.

*Little, Powell, Smith & Goldstein, Sibley & Sibley,* for plaintiffs in error.   *Allen & Pottle,* contra.

BELL, J.   Mrs. T. Hines Ennis brought suit against American Gas Machine. Company, King Hardware Company, and Purchase and Sale Company, to recover damages for personal injuries sustained as the result of the explosion of a gasoline cooking-stove, alleged to have been manufactured by the first-named defendant and sold to the plaintiff's husband by or through the other defendants, and thereafter placed in her home, where she was injured while attempting to use it.   King Hardware Company and Purchase and Sale Company filed general and special demurrers, which the court overruled, and they severally excepted.   American Gas Machine Company is not a party in this court, because, as stated in one of the briefs, that defendant made an issue as to service, which issue is still pending in the court below.   However, as certain allegations with respect to that company must be considered in passing upon the case as to the other defendants, it becomes necessary to state the case substantially as though all the parties sued were now before the court.   The defendants in the court below, as named above respectively, will be referred to herein as the Gas company, the Hardware company and the Sale company.

The petition with the amendments thereto made the following case:   On or about June 1, 1927, the Gas company, a corporation of New York, was engaged in the business of manufacturing, selling, and distributing in the State of Georgia and other States a cer-

tain gasoline cooking-stove known as "Kitchenkook," and through its agents was selling and distributing stoves of this type in the county of Baldwin, wherein the plaintiff resided. The Hardware company, a corporation, was the agent and representative of the Gas company in the State of Georgia, having its agency and place of business in Fulton county. The Sale company was the agent and representative of both the other companies, having its agency and place of business in the county of Baldwin, in this State.

On or about the date above mentioned, the plaintiff's husband was solicited by the Sale company, "the agent and distributor of said stoves in said county, to purchase one of said stoves, and said stove was delivered to the said T. Hines Ennis at his home in the city of Milledgeville, occupied by himself and his wife, your petitioner." The stove contained three burners, to which gasoline was distributed from a tank, and after being lighted, the gasoline vaporized and produced flames necessary for its operation. On July 13, 1927, the stove being in the plaintiff's kitchen, she lighted the burners thereof and returned to her room. A little later, on being informed by a servant that the lights had gone out, she immediately returned to the kitchen for the purpose of relighting the stove, and on striking a match applied it to one of the burners, when the stove suddenly exploded, seriously and permanently injuring her. All three of the defendants were negligent and liable to the plaintiff because of having manufactured, furnished and sold to her husband for her use a defective appliance. The stove was defective in that the gasoline [pipe?] from the tank which supplied the burners was so defective that the gasoline leaked into the stove, and that, as a result, when the burner was ignited the gasoline which had leaked in immediately caught fire and caused the explosion. The plaintiff had had no experience with stoves of such character, and, in using the particular stove, followed directions "given her by the agents and representatives of said manufacturer and distributors; and . . she could not have avoided the injuries sustained by her by the exercise of ordinary care and diligence." Being entirely unfamiliar with the construction and operation of the stove referred to, the plaintiff "is unable to set out specially and in detail the particulars in which said stove was defectively constructed. She avers that said stove was constructed with three gas burners on the top and one gas burner in the oven. At the right

of said stove and at the top was a tank or receptacle wherein the gasoline, fed into the pipes leading to the burners, was stored. When the burners were lighted the heat caused the gasoline to vaporize and generate a gas. When the burners were not lighted the flow of gasoline should automatically have stopped, if said stove was properly constructed. Plaintiff avers that said stove was defectively constructed in that when, the burners were not lighted, the flow of gasoline instead of being stopped, as ordinary diligence in construction required, it seeped into the oven and accumulated there, and when she undertook to relight the burner after it was extinguished the flame came in contact with said accumulated gas, and caused the explosion hereinbefore described. Plaintiff charges that when she undertook to relight the extinguished burner she was wholly unaware that said gasoline had escaped and seeped into the oven, and, being unacquainted with the mechanism of the stove, had no means of knowing that fact. She relied and had the right to rely on the representations, both express and implied, of the manufacturer and the distributors that said stove was properly and skilfully constructed."

At the time the plaintiff acquired the stove and before she undertook to use it "an agent and representative of the manufacturer, and of the jobber, King Hardware Company, and the retailer, Purchase and Sales Company, came to her home and superintended the installation thereof. She avers that she is unable to give the name of said agent, not knowing the same, but she does aver that said agent gave her specific instructions as to the operation of said stove, and assured her that it was impossible for said stove to explode. She avers that she followed the instructions of said agent to the letter on every occasion upon which she used said stove." The plaintiff "brings her action against the three defendants named as joint trespassers . . , disclaiming all right of action on account of any contractual relationship." The stove at the time of the explosion was in the same condition as when it was furnished to her, and its condition had remained unchanged from the time it was delivered by the Gas company to the Hardware company, from which it passed to the Sale company and thence into the home of the plaintiff. "The dangerous character of said stove was known to all three of said defendants, or could have been known by the exercise of ordinary care and diligence." The stove was manu-

factured by the Gas Company for the purpose of being sold generally to the trade, and the Hardware company, "as the distributor of said stove and other stoves of a similar character manufactured by the manufacturer, intended the distribution thereof among its various patrons, and knew that said stove would likely be purchased and used by some purchaser thereafter, and that said Purchase and Sale Company, the retailer, procured said stove and other stoves of similar character with the full intent and purpose to sell the same to the retail trade, well knowing that they would probably be purchased by consumers."

With the exception of certain grounds of the demurrer filed by the Hardware company relating to misjoinder and want of jurisdiction, none of which have been argued or insisted upon in the briefs and are therefore considered as abandoned, the demurrers of each of the defendants were substantially the same, and their several grounds, while not presented in the order named below, were in brief as follows: (1) No cause of action set forth. (2) Allegations of negligence too vague, indefinite and uncertain. (3) Allegations insufficient to show any defect, or whether defect was latent or patent. (4) The allegations that "When the burners were not lighted the flow of gasoline should automatically have stopped, if said stove was properly constructed," and that "said stove was defectively constructed in that when the burners were not lighted the flow of gasoline, instead of being stopped, as ordinary diligence in construction required, seeped into the oven and accumulated there," are mere conclusions of the pleader, being unsupported by any specific allegation of fact. (5) It is not shown what acts of care or diligence the plaintiff did. (6) From the petition as a whole it affirmatively appears that the plaintiff's injuries were not caused by any negligence of the defendants, but was the result of her own negligence and failure to exercise ordinary care.

Whether the petition sets forth a cause of action as against the Gas company, the manufacturer, is a question with which we are, of course, not concerned in this case. As to the other two defendants we think the petition good. The petition seems to be duplicitous in that in some places it refers to the Hardware company and the Sale company as the manufacturer's agents, while in other places it refers to them, respectively, as wholesaler or jobber and local dealer. However, there was no demurrer upon the ground of

duplicity; and since in our opinion the petition sufficiently states a cause of action against the defendants as sellers, it is unnecessary to determine whether the same would be true should they be considered as mere agents of the manufacturers. *Citizens & Southern Bank* v. *Union Warehouse Co.,* 157 *Ga.* 434 (6, 7), 454, 455 (122 S. E. 327).

It is the general rule that a vendor or dealer who is not the manufacturer is under no obligation to test an article purchased and sold by him for the purpose of discovering latent or concealed defects, but that when he purchases and sells an article in common and general use, in the usual course of trade, without knowledge of its dangerous quality, and with nothing tending reasonably to call his attention thereto, he is not negligent in failing to exercise care to determine whether it is dangerous or not. In such a case he may assume that the manufacturer has done his duty in properly constructing the article and in not placing upon the market a commodity which is defective and likely to inflict injury. Kress *v.* Lindsey (C. C. A.), 262 Fed. 331, 13 A. L. R. 1170; Osheroff *v.* Rhodes-Burford Co., 203 Ky. 408 (262 S. W. 583); Pitman *v.* Lynn Gas & Electric Co., 241 Mass. 322 (135 N. E. 233); Pate Auto Co. *v.* Westbrook Elevator Co., 142 Miss. 419 (107 So. 552); Bond *v.* Consolidated Gas &c. Co., 146 Md. 390 (126 Atl. 105, 42 A. L. R. 1237); Walden *v.* Wheeler, 153 Ky. 181 (154 S. W. 1088, 44 L. R. A. (N. S.) 597); Clement *v.* Rommeck, 149 Mich. 595 (113 N. W. 286, 13 L. R. A. (N. S.) 382, 119 Am. St. R. 695); 24 R. C. L. 509, § 802.

This is to speak only of articles which are not inherently dangerous. While we construe the petition in this case as alleging, not that the stove was inherently dangerous, but that it was dangerous because of a defect, we think it may be reasonably inferred from all the facts alleged that the defect was one which a reasonably prudent dealer should have discovered before placing it upon the market and delivering it to a customer. *Smith* v. *Clarke Hardware Co.,* 100 *Ga.* 163 (28 S. E. 73, 39 L. R. A. 607); *Mansfield* v. *Richardson,* 118 *Ga.* 250 (45 S. E. 269); *Monahan* v. *National Really Co.,* 4 *Ga. App.* 680 (62 S. E. 127); *Hickman* v. *Toole,* 35 *Ga. App.* 697 (3) (134 S. E. 635); Richmond & Danville R. Co. *v.* Elliott, 149 U. S. 266 (13 Sup. Ct. 837, 37 L. ed. 728); Lewis *v.* Terry, 111 Cal. 39 (43 Pac. 398, 31 L. R. A. 220, 52 Am. St. R.

146) ; Gerkin *v.* Brown, 177 Mich. 45 (143 N. W. 48, 48 L. R. A. (N. S.) 224) ; Cox *v.* Mayson, 89 App. Div. 219 (85 N. Y. S. 973) ; Garvey *v.* Namm, 136 App. 815 (121 N. Y. S. 442) ; Cashwell *v.* Fayetteville Pepsi-Cola Bottling Co., 174 N. C. 324 (93 S. E. 902) ; 24 R. C. L. 517, § 808; 45 C. J. 892.

Though it is not expressly averred that the defect was patent or reasonably observable, yet such a conclusion is fairly deducible from all the facts pleaded. It is a matter of common knowledge that cooking stoves do not come in sealed packages, but are readily subject to be exposed, and usually are exposed, if not demonstrated, in the process of selling. It is well known that dealers selling such articles do as a matter of fact pretend to know something of their construction and of the manner of their manipulation, and the case is different from those instances where the dealer receives and transmits an article in an unbroken package, with no occasion to investigate or to become acquainted with its character. *Fleetwood v. Swift,* 27 *Ga. App.* 502 (108 S. E. 909) ; Hasbrouck *v.* Armour, 139 Wis. 357 (121 N. W. 157, 23 L. R. A. (N. S.) 876). Thus, it can not be said that the defendants in this case should not have known of the defective condition of the stove in question. On the contrary, the petition, as against demurrer, sufficiently shows a duty of knowledge, and in such a case a charge of implied notice is sufficient. Where preliminary facts necessary to disclose a duty of knowledge by the proprietor have been set forth, a statement, as a conclusion, that he knew or ought to have known is not objectionable as failing to show negligence. *Fulton Ice & Coal Co.* v. *Pece,* 29 *Ga. App.* 507 (2) (116 S. E. 57).

It should be understood that in referring to the custom of merchants to expose or demonstrate an article such as a cooking stove in the transaction of selling it (Civil Code of 1910, § 5734; *Pollak v. Niall-Herin Co.,* 137 *Ga.* 23, 25, 72 S. E. 415, 35 L. R. A. (N. S.) 13), we are speaking only of what we take to be the general practice or custom. If there should be an exception in the case of the type of stove known as "Kitchenkook," the fact does not affirmatively appear, and the petition will not be construed in the light of possible but unmentioned exceptions to the ordinary rule of conduct. We are not intending here to take judicial cognizance of facts which could not be controverted by proof (*Rome Ry. Co.* v. *Keel,* 3 *Ga. App.* 769 (2), 60 S. E. 468), but say merely that the

petition shows enough to carry the case to the jury, on proof of the allegations made. If the kind of stove known as "Kitchenkook" is not handled and marketed in the usual way, this fact may be established defensively, should it not affirmatively appear from evidence introduced by the plaintiff. 22 C. J. 103; *Larkin* v. *Andrews,* 27 *Ga. App.* 685 (2) (109 S. E. 518); *Columbus R. Co.* v. *Moore,* 29 *Ga. App.* 79 (113 S. E. 820).

Moreover, the petition alleged that the agent of the defendants went to the plaintiff's home and superintended the installation of the stove, giving to her specific instructions as to its operation, and assuring her that it was impossible for it to explode. She further avers that she followed the instructions to the letter upon every occasion when she used it.

While it may seem inconsistent to aver in some parts of the petition that the defendants were dealers and in other parts that they were the manufacturer's agents, and then to claim that the person who made such representations was the agent of the defendants in either case, none of the allegations on the subject of agency or of the relationships of the various persons were demurred to upon the ground of duplicity, and in the face of such ambiguity the petition will be so construed as to sustain the cause of action, if one is stated upon either theory. Hence, if, on regarding the defendants as agents, the installer referred to as the agent of all should be deemed to be the sub-agent of the defendants and the responsible agent only of the manufacturer, and if in this view the representations should be referable to the manufacturer and not to the defendants, the petition should in that case be construed as alleging that the defendants were dealers, with the installer representing them as agents, so as to make them responsible for his conduct, the specific allegations being that he was their agent and representative. *New Zealand Fire Ins. Co.* v. *Brewer,* 29 *Ga. App.* 773 (8 *e*) (116 S. E. 922); *Central Railroad &c. Co.* v. *Pickett,* 87 *Ga.* 734 (13 S. E. 750); *Central of Georgia Ry. Co.* v. *Banks,* 128 *Ga.* 785 (58 S. E. 352). It is not impossible in law that he should have been at once the common agent of the manufacturer, and of the wholesaler or distributor, and of the local dealer, even granting that the two last named did not stand as agents to each other and were not the agents of the manufacturer. *Louisville & Nashville R. Co.* v. *Tift,* 100 *Ga.* 86 (2) (27 S. E. 765); *Morris* v. *Warlick,* 118 *Ga.* 721 (45 S. E. 407); 2 C. J. 690.

So, even if it could be said that the petition fails to allege any facts to show a duty on the part of the defendants to have known of the defective character of the instrumentality, provided no representations were made, yet, since the petition may be reasonably construed as alleging representations by the defendants' agent, they will for the purpose of demurrer be held responsible therefor. It certainly could not be held that they were without a duty of discovering the defect when they assumed to represent that the stove was safe and could not explode. If a person is without knowledge as to whether a particular thing is true or not, he ordinarily will act at his peril in representing it to be true. Civil Code (1910), §§ 4622, 4623; *Allison* v. *Nunn,* 34 *Ga. App.* 561 (130 S. E. 364); *Cunningham* v. Pease House Furnishing Co., 74 N. H. 435 (69 Atl. 120, 20 L. R. A. (N. S.) 236, 124 Am. St. R. 979). Thus, if a dealer, in placing upon the market an article which is manufactured by another, is without knowledge as to whether it be sound, or, on the contrary, defective, he should stand where the law places him and pass the article on upon the assumption, without more, that the manufacturer has performed the duty of properly constructing the article and of making it safe for the common use intended. *Smith* v. *Clarke Hardware Co.,* supra; *Woodward* v. *Miller,* 119 *Ga.* 618 (68 S. E. 847, 64 L. R. A. 932, 100 Am. St. R. 188); Peaslee-Gaulbert Co. v. McMath, 148 Ky. 265 (146 S. W. 770, 39 L. R. A. (N. S.) 465, Ann. Cas. 1913E, 392); Cunningham v. Pease House Furnishing Co., 74 N. H. 435 (69 Atl. 120, 20 L. R. A. (N. S.) 236, 124 Am. St. R: 979); 24 R. C. L. 517; 45 C. J. 892.

Representations imply knowledge, and if a tradesman sells or furnishes an article representing it to be safe for the uses for which it was designed, it may be concluded that he knew or should have known of such defects as it may possess, and if it turns out that the article was defective, then, in a suit against him for injuries occasioned thereby, an allegation that he either knew or ought to have known of the defects will be sufficient as a charge of negligence in his failure to know.

The action being in tort, it is immaterial that there was no privity of contract between the plaintiff and the defendants in the sale of the stove; and the more especially is this true since the representations were made directly to the plaintiff. *Woodward* v. *Miller,* supra; Civil Code (1910), § 4408.

The petition was not subject to special demurrer upon the ground that it failed to show a defect or to describe the alleged defect with sufficient particularity. In *Atlantic Coast Line R. Co.* v. *Davis,* 5 *Ga. App.* 214 (62 S. E. 1022), the allegations were as follows: "Said engine's spark-arrester was insufficiently and improperly constructed to prevent live sparks of fire from issuing from said smoke-stack, and the engineer in charge of said locomotive was negligent in operating said locomotive, in that he caused said engine to exhaust at that point, and not at some other point, where there was less danger of fire being caused by such emission of sparks, as in a swamp or while crossing a stream, which he had an opportunity of doing, there being no necessity for causing such emission of sparks at that point." The court said: "Reasonable certainty is all that is required in pleadings. Mere conclusions will not suffice as allegations of negligence. However, structural descriptions of defects alleged in machinery are not required in order to give the necessary certainty. To state specific concrete improper results which a machine in question produced is often sufficient to describe a defect definitely. In other words, to say that a locomotive smoke-stack was so insufficiently constructed that it allowed live sparks of fire to come through describes with legal definiteness a lack in its construction. An examination of the record upon which the fifth headnote in the case of *Green* v. *Babcock Co.,* 130 *Ga.* 470 (60 S. E. 1062), is based shows that the Supreme Court recognizes and applies this principle. See also *Ga. Ry. & El. Co.* v. *Reeves,* 123 *Ga.* 697 (51 S. E. 610)."

Again, in *Charleston &c. Ry. Co.* v. *Attaway,* 7 *Ga. App.* 231 (2 *a*) (66 S. E. 548), it was held: "A defect in a machine may be described by showing that the machine was in such condition that it produced certain definitely described results which a machine not defective would not and should not produce. It is not necessary to describe minutely or particularly the physical appearance of the parts alleged to be defective."

The petition contained but a single count, and all the facts stated therein are to be considered together, and the allegations as to the representations of safety are not without some importance in passing upon the sufficiency of the averments concerning the defects, which were thus impliedly affirmed by the defendants not to exist. The allegations of the petition descriptive of the circum-

stances antecedent to and attendant upon the plaintiff's injury should be considered in passing upon the specifications of negligence to which the special demurrer was addressed, and from all the facts pleaded it can not be said that the petition failed to describe with sufficient definiteness the defect complained of. *O'Dell* v. *Wolcott,* 14 *Ga. App.* 536 (3) (81 S. E. 819). Should it appear from the evidence that the stove was not defective unless from the fact that it was not equipped with some particular device, it would seem that the plaintiff would have the burden of proving at least that such device was in common use upon gasoline cooking stoves, in order to show negligence in its omission from the stove in question. *Southern Ry. Co.* v. *Thompson,* 129 *Ga.* 367 (7) (58 S. E. 1044); *Louisville & Nashville R. Co.* v. *Sluddard,* 34 *Ga. App.* 570 (7) (130 S. E. 532).

It can not be said by the court as law that the plaintiff's case should fail merely because the explosion did not occur sooner than it did. The purchase of the stove appears to have been made approximately six weeks previously, but we can not hold from the petition that the plaintiff ought to have discovered that it was defective or dangerous before using it upon the particular occasion.

In a case of this sort, that the plaintiff may have avoided the consequences of the defendants' negligence by the exercise of ordinary care is a matter of defense, and the petition will not be dismissed on demurrer on the ground that by the exercise of such care the plaintiff could have avoided the consequences of the negligence alleged, unless it affirmatively discloses facts from which such conclusion would be demanded. *Collins* v. *Augusta-Aiken Ry. Corp.,* 13 *Ga. App.* 124 (2) (78 S. E. 944). Since it was not necessary for the plaintiff to negative her own want of care, the petition was not demurrable because it failed to allege what acts were done by her in the exercise of care. *Western & Atlantic Railroad* v. *Reed,* 33 *Ga. App.* 396 (2), 400 (126 S. E. 393).

The petition set forth a cause of action and was not subject to any of the demurrers, either general or special, interposed thereto.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*