19 F.3d 601
 Ernest Ray KITCHEN, and Carolyn D. Kitchen, Individually and
as Natural Parents of John David Kitchen, Deceased, Ernest
Ray Kitchen, as Personal Representative of the Estate of
John David Kitchen, Deceased, Plaintiffs-Appellants,
v.
CSX TRANSPORTATION, INC., Successor by merger to all
interest, rights, liabilities, responsibilities
and obligations of Seaboard Coast Line
Railroad Company, Defendant-Appellee.
County of Elbert, Georgia, et al., Defendants.
 No. 92-9071.
 United States Court of Appeals,
Eleventh Circuit.
 April 22, 1994.
 
 Billy Earnest Moore, Atlanta, GA, William T. Gerard, Gerard & Mathews, Athens, GA, for plaintiffs-appellants.
 Jack Harrell Senterfitt, Alston & Bird, Atlanta, GA, Cynthia G. Weaver, Heard Leverett & Phelps, Elberton, GA, for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before TJOFLAT, Chief Judge, EDMONDSON and CARNES, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal from the grant of summary judgment to a defendant involves a wrongful death case arising out of an automobile crash in May 1988, when the deceased, John David Kitchen, was traveling on a county road in Elbert County, Georgia. Because resolution of this case involves questions of Georgia law which are dispositive but unanswered by precedent in the decisions of the Supreme Court of Georgia, we defer our decision in this case pending certification of the following question to the Supreme Court of Georgia pursuant to GA. CONST. art. VI, Sec. 6, para. 4, O.C.G.A. Sec. 15-2-9, and Rule 37 of the Supreme Court of Georgia. See Polston v. Boomershine Pontiac-GMC Truck, Inc., 952 F.2d 1304 (11th Cir.1992).
 
 
 2
 We submit the following for consideration by the Supreme Court of Georgia.
 
 
 3
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO ARTICLE VI SECTION VI PARAGRAPH IV OF THE GEORGIA CONSTITUTION.
 
 
 4
 TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES THEREOF.
 
 I. STYLE OF THE CASE
 
 5
 The style of the case on which this certificate is made is as follows: ERNEST RAY KITCHEN and CAROLYN D. KITCHEN, Individually and as Natural Parents of John David Kitchen, Deceased, ERNEST RAY KITCHEN, as Personal Representative of the Estate of John David Kitchen, Deceased, Plaintiffs/Appellants, versus CSX TRANSPORTATION, INC., Successor by merger to all interest, rights, liabilities, responsibilities and obligations of Seaboard Coast Line Railroad Company, Defendant/Appellee, COUNTY OF Elbert, Georgia, et al., Defendants, Case No. 92-9071, filed in the United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Northern District of Georgia.
 
 II. FACTS AND BACKGROUND
 
 6
 Plaintiffs, the parents of the deceased and the personal representative of the estate of the deceased, filed this lawsuit against CSX Transportation ("CSXT"), Elbert County, and certain Elbert County officials.[1] The incident giving rise to this litigation occurred while the deceased was operating his motor vehicle on Elbert County Road Number 77. County Road 77 had earlier been a part of Georgia State Highway 72; in 1961, the State of Georgia released this portion of State Highway 72 to Elbert County. The stretch of road on which the incident occurred had at one time included a timber bridge, which crossed above railroad tracks owned by Seaboard Coast Line Railroad (now CSXT).
 
 
 7
 On June 10, 1961, the railroad and the County executed an Agreement which provided:
 
 
 8
 1. Railroad hereby gives County the right to continue the overpass in place at the above mentioned location.
 
 
 9
 2. Title to the entire overpass is vested in County and County will, at its expense, maintain the same, including the highway surface.
 
 
 10
 3. Should the overpass be abandoned, then all rights hereby granted County to use Railroad's right of way shall thereupon cease and determine.
 
 
 11
 By 1979, the bridge had deteriorated; and the County decided that the stretch of road on which the bridge lay was no longer necessary to through traffic. The railroad and the County formed an agreement under which the railroad would remove the bridge and the County would furnish barricades on either side of County Road 77 where the road terminated. The barricades consisted of piles of rocks and dirt lying on County Road 77 (the district court has assumed the barricades were insufficient to warn Kitchen that the road had terminated).
 
 
 12
 In the early morning of May 22, 1988, John David Kitchen drove his pick-up truck over the barricade and into the chasm formerly spanned by the bridge. Kitchen's truck fell onto the tracks some twenty-six feet below. Approximately three hours later, a train collided with the truck. Kitchen was pronounced dead at the scene.
 
 
 13
 The district court granted summary judgment for CSXT, holding that "CSXT had no duty to erect or maintain any barriers at the ends of County Road No. 77."
 
 III. THE PARTIES' CONTENTIONS
 A. Common Law
 
 14
 The Kitchens contend that Georgia common law imposed a duty on CSXT "to guard the safety of those who may be injured by the inherently dangerous condition ... which it caused and maintained on its land immediately adjacent to a public highway." In Int'l Paper Realty Co. v. Bethune, 256 Ga. 54, 344 S.E.2d 228 (Ga.1986), the court said that a landowner, whose land sits immediately adjacent to a public way,
 
 
 15
 may not, without incurring a duty, maintain an artificial condition so situated that persons lawfully using the public way may, by accident or some force not their own fault, fall upon and be injured by the artificial condition.
 
 
 16
 344 S.E.2d at 229.
 
 
 17
 In Bethune, the court cited the decision in Nashville, Chattanooga & St. L. Ry. Co. v. Cook, 177 Ga. 196, 170 S.E. 28 (Ga.1933). In Cook, the plaintiff drove off a public road into a railroad right of way--as here, the public road terminated at a "ditch or excavation" on the right of way. The Kitchens argue that Cook is indistinguishable. In Cook, the court affirmed the following ruling by the Court of Appeals:
 
 
 18
 Where immediately at the end of a paved road, and upon the property of a landowner abutting the end of the road, there is knowingly and negligently maintained by the landowner, without rails or barriers, an excavation or ditch six feet deep and four feet in width, the owner of the land is liable in damages for injuries received by a person travelling along the roadway at night who in the exercise of due care and without negligence runs into the ditch or excavation.
 
 
 19
 170 S.E. at 29.
 
 
 20
 The district court expressed doubt that Georgia courts would apply Cook when the "excavation" at issue was a railroad bed. CSXT agrees. And, the district court noted that Kitchen introduced no evidence that the railroad bed itself was an "excavation" or "artificial condition" such as existed in Bethune. The Kitchens argue that, because the railroad removed the bridge under the 1979 agreement, the railroad maintained responsibility for injuries resulting from the proximity of the public road to the depression, whether created "artificially" or otherwise.
 
 
 21
 B. Statutory "Pre-emption" of the Common Law
 
 
 22
 CSXT contends that the Georgia legislature's 1973 overhaul of the Code of Transportation supplanted pre-existing common law duties to warn persons using public roads of dangers associated with an adjacent railroad bed. Noting that "[t]he express purpose of the Georgia Code of Transportation was 'to revise, classify, consolidate, and repeal ... other laws relating to all public roads [and] bridges ... and to establish new laws relating thereto,' " 1973 Ga.Laws 947, the district court agreed.
 
 
 23
 Pursuant to O.C.G.A. Sec. 32-6-197,
 
 
 24
 [i]t shall be the duty of the county or the municipality to maintain at its own expense the drainage, surface, pavement, approaches, and guardrails of all overpasses involving railroads on its respective public road system.
 
 
 25
 O.C.G.A. Sec. 32-6-197(b). The district court concluded that section 32-6-197 applied to County Road 77; and, relying on City of Fairburn v. Cook, 188 Ga.App. 58, 372 S.E.2d 245 (Ga.App.1988), the district court concluded that "a railroad has no duty to maintain the approaches to an overpass." In City of Fairburn, a driver was injured in an intersection allegedly obscured by a bridge constructed by the railroad. First, the court noted that a railroad is prevented by statute from installing traffic control devices on its own initiative.[2] Moreover, "[n]othing in O.C.G.A. Sec. 32-6-197 ... places any duty on a railroad regarding the installation or maintenance of traffic control devices in the area around a railroad underpass." 372 S.E.2d at 247. Because the railroad "neither created nor maintained the dangerous condition that gave rise to appellee's injury," the railroad in City of Fairburn breached no duty. Id. at 248. CSXT argues that, because the City of Fairburn rationale should apply equally to overpasses, the Kitchens cannot prevail.
 
 
 26
 The Kitchens counter by arguing that, because no "overpass" actually existed when the incident occurred, City of Fairburn and O.C.G.A. Sec. 32-6-197 have nothing to do with this case. In general, the Kitchens disagree with the notion that the existence of statutory treatment "preempts" all common law duties in all circumstances; that the statutes may not even contemplate this set of circumstances, they argue, is simply more evidence that the common law has a role to play.
 
 
 27
 Certain Georgia case law seems to support the Kitchens' view. In Central of Georgia R. Co. v. Markert, 200 Ga.App. 851, 410 S.E.2d 437 (Ga.App.1991), for instance, the court noted that the nonexistence of a statutory duty for railroads to install warning devices at private grade crossings, as opposed to public grade crossings, see O.C.G.A. Sec. 32-6-200, did not rid the railroad of pre-existing common law duties to warn. Notwithstanding the statutory treatment, the railroad "would have no less of a common law duty with regard to a private crossing than they would have with regard to a public crossing." 410 S.E.2d at 439-40. In other words, common law duties may apply even when statutes clearly enumerate certain duties. See also Southern Ry. Co. v. Ga. Kraft Co., 188 Ga.App. 623, 373 S.E.2d 774 (Ga.App.1988) (authorizing giving of charge to jury "that it was to decide whether [the railroad] was negligent in failing to employ additional precautions at the crossing").
 
 
 28
 CSXT argues that its statutory theory is supported by more than just the City of Fairburn decision. In Purvis v. Virgil Barber Contractor, Inc., 205 Ga.App. 13, 421 S.E.2d 303 (Ga.App.1992), the injured plaintiff drove through an unmarked "T" intersection; at the time, a contracting company was paving a stretch of the highway near the intersection. The Purvis court said that the contracting company had no duty to warn drivers of the intersection; under sections 32-4-41(1) & 32-6-50(c), the county held the affirmative obligation to install warning signs. And, as in City of Fairburn, the court noted that the private contractor was prohibited from placing warning signs "on its own initiative." 421 S.E.2d at 305. If the contractor in Purvis could not install warning signs, CSXT argues, neither could it install warning signs on County Road 77.
 
 
 29
 The Kitchens also attempt to rebut CSXT's statutory argument by urging that the citation to Nashville, Chattanooga & St. L. Ry. v. Cook, by the Georgia Supreme Court, preserved the common law duty of railroads to warn drivers of dangerous conditions adjacent to public roads, notwithstanding the elaborate statutory framework.
 
 IV. QUESTION TO BE CERTIFIED
 
 30
 Under the set of facts described above, did CSXT owe a duty to John David Kitchens? And, if a duty was owed, what was the nature of the duty?
 
 
 31
 Nothing in this certification, including our statement of the question to be certified, is meant to limit the scope of inquiry by the Supreme Court of Georgia. See Polston, 952 F.2d at 1310-11.
 
 
 32
 The entire record in the case, together with copies of the briefs of the parties, is transmitted herewith.
 
 
 33
 QUESTION CERTIFIED.
 
 
 
 [1]
 This appeal concerns only defendant CSXT. The Kitchens' suit against the remaining defendants is discussed at 6 F.3d 727 (11th Cir.1993)
 
 
 [2]
 Here, CSXT contends that Georgia Department of Transportation regulations prohibit it from maintaining traffic control devices on County Road 77. See Manual on Uniform Traffic Control Devices, Sec. 1A-3.1